**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

C&Z, LLC, a New Mexico Limited
Liability Company,

       Plaintiff,

v.   No. 1:13-CV-00128-JAP-GBW

LOWE'S HOME CENTERS, INC.,
a North Carolina Corporation,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On March 8, 2013, Plaintiff C&Z, LLC ("C&Z") filed a MOTION TO REMAND (Doc. No. 4) ("Motion to Remand"), arguing that Defendant Lowe's Home Centers, Inc.'s ("Lowe's") removal of this action from state court was untimely. In response, Lowe's contends that C&Z's COMPLAINT FOR BREACH OF LEASE AND INDEMNIFICATION (Doc. No. 1-2) ("Complaint") did not state the damages sought by C&Z clearly enough, and that Lowe's removed the case as soon as Lowe's realized that the amount in controversy was more than $75,000. RESPONSE TO MOTION TO REMAND (Doc. No. 7) ("Response") at 1-2. The Court, having considered the parties' briefs and the relevant law, concludes that C&Z's Motion to Remand should be granted.

## BACKGROUND

**A. Facts Related to C&Z's Original Cause of Action**

Lowe's leases an 8.5504 acre tract in the San Isidro Plaza Shopping Center ("Shopping Center") in Santa Fe, New Mexico. *See* Site Development Agreement (Complaint Exhibit B, Doc. No. 1-2) ("Development Agreement") at 1. C&Z owns the Shopping Center. *See* Complaint ¶ 1. The tract leased by Lowe's comprises "approximately 60% of the non-common area square footage in the Shopping Center." *Id.* ¶ 11. In 2005, as part of the lease arrangement, Lowe's entered an agreement with C&Z regarding obligations for "payment of certain expenses for the purposes of development and operation of parcels of an integrated Shopping Center." *Id.* ¶ 6; *see also* Easement, Covenants,

1

Conditions and Restrictions (Complaint Exhibit A, Doc. No. 1-2) ("ECCR"). Around the same time, the parties signed the Development Agreement, which required Lowe's to "construct certain improvements at the Shopping Center and C&Z [to] perform certain pre-construction activities at the Shopping Center." Complaint ¶ 7. As detailed below, C&Z contends that Lowe's has failed to comply with the terms of the ECCR and Development Agreement, leading to damages incurred by C&Z.

### B. Facts Related to the Amount in Controversy Issue

C&Z's Complaint contains four discrete sets of allegations of breach of contract by Lowe's and of the related damages. First, C&Z alleges that in 2012, Lowe's "unilaterally failed and refused to defray security costs invoiced, due and owing" in a total sum of approximately $58,288.96. Complaint at ¶ 13. C&Z also contends that Lowe's will be "liable for future security and electrical expenses reasonably attributable to Lowe's." *Id*. The Shopping Center lease, as Lowe's must have known, will run for fifty-six more quarters. *See* Affidavit of Greg Gonzales, Exhibit B to Motion to Remand (Doc No. 4-2) ("Gonzales Aff.") at 3. The ECCR requires payment of these costs and indemnification of "any party who suffers 'damages or expenses' incurred as a result of a default" in paying such costs. *See id.* ¶¶ 9-13 (citing ECCR §§ 5.2(c), (e), and (i)).

Second, C&Z alleges that the City of Santa Fe has found that a drainage pond on the Lowe's site violates city codes. *See id.* ¶¶ 16-19. C&Z attached to its Complaint a letter from the City stating this issue and noting that if it resulted in a citation, "a fine of up to $500 or up to 90 days in jail for each day the violation occurs or both" could be imposed. *See* City of Santa Fe Letter of June 15, 2012 to Greg Gonzales (Complaint Exhibit C, Doc. No. 1-2) ("Santa Fe June 15 Letter") at 2.

Third, C&Z says that Lowe's breached part of the Development Agreement covering lighting at the Shopping Center. *See* Complaint ¶¶ 28-29 (citing § 3.2(H) of the Development Agreement). While Lowe's installed lighting, the lighting was faulty, causing C&Z to "incur[] significant expenses." *Id.* ¶¶ 30-31. The Development Agreement makes Lowe's responsible for "indemnify[ing] C&Z against 'loss, damages [and] expense' arising out of its construction activity," so C&Z "has demanded that

Lowe's pay its reasonable repair and increased operating expenses relating to lighting, [but] Lowe's has failed and refused to do so." *Id.* ¶¶ 32-33 (citing § 6.1 of the Development Agreement).

Finally, C&Z contends that it leases land for part of Lowe's parking lot. *See* Complaint at ¶¶ 34-36. C&Z says that because Lowe's needs the leased space to comply with Santa Fe's City Land Development Code, the real estate taxes related to that leased space are costs "reasonably necessary for the operation, maintenance, repair and insurance of the Common Maintenance Areas" in the Shopping Center. *Id.* ¶¶ 37-39. Therefore, C&Z says that under the ECCR agreement Lowe's must pay a share of the real estate taxes for the parking area, but that "Lowe's has failed and refused to do so." *Id.* ¶¶ 39-41 (citing § 5.2(c) of the ECCR).

In the Complaint's two counts, for breach of lease and indemnification, C&Z incorporates the above allegations. C&Z says that because Lowe's has breached its agreements with C&Z, C&Z has suffered injuries and is entitled to damages "in an amount to be proven at trial," with the damage amount including attorneys' fees. Complaint ¶¶ 44-45. C&Z also requests "a judgment ordering Lowe's to immediately assume the defense of the City of Santa Fe's code enforcement action, and to make required repairs to the storm water retention pond." *Id.* ¶ 47. Additionally, C&Z contends that Lowe's must be ordered "to indemnify [C&Z] against any liability, costs and expenses, including attorneys' fees, that result from its breaches of its other indemnity obligations." *Id.* ¶ 48.

### C. Facts Related to the Timeliness Issue

On November 8, 2012, C&Z filed its Complaint against Lowe's in the First Judicial District Court, County of Santa Fe, State of New Mexico. As discussed above, the only specific dollar amount alleged in the Complaint is related to the unpaid security costs and unpaid electricity costs, a total of $58,288.96. *See* Complaint ¶ 13; *see also* NOTICE OF REMOVAL (Doc. No. 1) ("Notice of Removal") at 4 (pointing out the Complaint's lack of other specific dollar amounts). However, on January 10, 2013, counsel for C&Z emailed counsel for Lowe's a detailed spreadsheet listing the unpaid Common Area Maintenance ("CAM") fees, which totaled $207,741.29. *See* Notice of Removal

3

at 4; *see also* January 10, 2013 Email Exchanges (Notice of Removal Exhibit C) (Doc. No. 1-4) ("January 10 Emails"). The spreadsheet did not contain an estimate of the value of any of C&Z's other claims. *See* January 10 Emails at 2. Then, on February 6, 2013—28 days from the date Lowe's counsel received the spreadsheet with the CAM fees, and 91 days from the filing of C&Z's Complaint in state court[1]—Lowe's filed its Notice of Removal in this Court.

## DISCUSSION

### A. Law Regarding Removal and Remand

Federal courts are courts of limited jurisdiction, and as such they must have a statutory or constitutional basis to exercise jurisdiction over any controversy. *See Montoya v. Chao,* 296 F.3d 952, 955 (10th Cir. 2002); *see also United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) (explaining that "[f]ederal courts . . . are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1."). Lowe's bases its claim of federal jurisdiction on diversity of citizenship under 28 U.S.C. § 1332. *See* Notice of Removal at 3-4. In addition to complete diversity of citizenship between plaintiffs and defendants, this statute requires an amount in controversy exceeding $75,000.

   1. Presumption Against Removal

"The courts must rigorously enforce Congress' intent to restrict federal jurisdiction in controversies between citizens of different states." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1339 (10th Cir. 1998) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). The presumption is thus against removal jurisdiction, and courts must refrain from exercising jurisdiction in cases where such jurisdiction does not affirmatively appear on the record. *See Ins. Corp. of Ireland,*

---

[1] C&Z says this time period was 92 days. *See* Motion to Remand at 1. The Court's calculation of that time period, including both the date of filing and the date of removal in the calculation, brings it to 91 days. As discussed below, the removal statute requires removal within a mere 30 days, if it is clear that federal jurisdiction exists at the time of filing. *See* 28 U.S.C. § 1446(b). In this context, the difference between 91 and 92 days is immaterial. Since the Court believes that its calculation of the time between filing and removal is the correct one, the Court will use its figure of 91 days.

*Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). "Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982). It is the defendant's burden to establish by a preponderance of the evidence that removal is proper. *See McPhail v. Deere & Co.*, 529 F.3d 947, 953 (10th Cir. 2008).

    2.  Procedural and Time Requirements for Removal

In general, a notice of removal from state court must "be filed within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). However, this thirty-day "removal period does not begin until the defendant is able 'to intelligently ascertain removability so that in his petition for removal he can make a simple and short statement of the facts.'" *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999) (quoting *DeBry v. Transamerica Corp.*, 601 F. 2d 480, 489 (10th Cir. 1979)). Therefore, if the initial pleading does not provide "clear and unequivocal notice" of the defendant's right of removal, the thirty-day clock does not begin to run at the time of filing of that initial pleading. *See Akin v. Ashland Chem. Co.*, 156 F. 3d 1030, 1036 (10th Cir. 1998).

Defendants in the Tenth Circuit are not under a duty to investigate if the initial pleading indicates, but does not firmly establish, that the right to remove *may* exist. *See id.* As a result, if an initial pleading is ambiguous in its statement of facts that might establish the right to remove, the thirty-day period under § 1446(b) does not begin to run until the defendant receives *unequivocal* notice, from the plaintiff or through the filing of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *See id.* at 1035; § 1446(b)(3). Finally, if a defendant does not act within the deadlines set forth by § 1446(b), it may waive its right to remove. *See Huffman*, 194 F.3d at 1077.

    3. Removal and Issues of Amount in Controversy

As noted above, for this Court to have jurisdiction under § 1332, there must be an amount in controversy exceeding $75,000, excluding interest and costs. The Tenth Circuit has noted that "[d]eterminations of sufficiency of the amount in controversy are governed by an odd set of rules." *McPhail*, 529 F.3d at 952. That is, a plaintiff can ward off removal merely by not stating specific damages figures in the complaint, while a defendant seeking to remove the case is required to prove jurisdictional facts, including the amount in controversy, by a preponderance of the evidence, at a time in the proceedings when very little discovery has usually happened. *See id.* In order to prevent this jurisdictional tug-of-war from being too lopsided, the Tenth Circuit has made it clear that post-removal documents and documents other than the complaint, which qualify as "other papers" under § 1446(b), may be used to assess the amount in controversy. *See id.* at 953-55.

On the other hand, while a defendant *may* engage in such research and analysis of a plaintiff's claims and post-removal evidence in order to establish that more than $75,000 is in controversy, the defendant is also not required to "investigate and determine removability." *Akin*, 156 F.3d at 1036. As discussed, because failure to comply with the thirty-day removal period leads to a defendant's forfeiture of its removal right, the Tenth Circuit "requires clear and unequivocal notice from the [original] pleading itself, or a subsequent 'other paper,'" that the case is removable. *Id.* (quoting § 1446(b)). Thus, if a complaint does not provide clear notice that the amount in controversy is over $75,000, allowing a defendant "able 'to intelligently ascertain removability," the defendant need not do research to determine whether or not the case is removable. *Huffman*, 194 F.3d at 1078 (quoting *DeBry*, 601 F.2d at 489). Of course, in practice defendants desiring federal jurisdiction presumably will engage in such investigation. But technically, if a complaint does not adequately establish that the amount in controversy is over $75,000, the thirty-day removal clock does not begin to run unless and until the defendant receives an "amended pleading, motion, order or other paper from which it may first be ascertained that" more than $75,000 is at issue and the case is removable. § 1446(b)(3).

6

**B. Analysis of C&Z's Complaint and Obligations of Lowe's under § 1446(b)**

The issue before the Court is not whether Lowe's, as the defendant with the burden of proving that the amount in controversy satisfies the requirements of § 1332, has done so. The Court finds that the Notice of Removal's statement of the amount in controversy states sufficient facts demonstrating that the amount in controversy exceeds $75,000 and that the parties are diverse, thereby granting the Court jurisdiction over the case. Indeed, C&Z agrees that "federal jurisdiction under 28 U.S.C. § 1332 exist[s]." Motion to Remand at 1. The question is whether, as C&Z contends, "it was *facially apparent* from [C&Z's] Complaint that federal jurisdiction . . . existed *at the time of the filing of the Complaint*." *Id.* (emphasis added). That is, the Court must determine whether Lowe's should have known at the time C&Z filed its Complaint in state court that the amount in controversy exceeded $75,000 and was therefore removable. If C&Z's Complaint provided "clear and unequivocal" notice that the amount in controversy was over $75,000, then Lowe's was required to remove the case within thirty days of the filing of C&Z's Complaint. But if Lowe's could not have gleaned from the Complaint that more than $75,000 was in controversy, and only became aware that such an amount was at issue on January 10, 2013, when C&Z's counsel sent counsel for Lowe's the spreadsheet detailing the CAM charges, then Lowe's February 6 removal, which was within 30 days of January 10, was timely.

1. C&Z's Arguments For Remand

C&Z takes the position that since its Complaint specifically seeks $58,288.96, and also claims numerous other damages, "it is apparent from the Complaint that [C&Z] seeks damages far in excess of" $75,000. Motion to Remand at 1-2. C&Z notes that "pre-removal attorney fees authorized by contract" total $5,779.92, bringing C&Z's claim to $64,068.88. *Id.* at 2 (citing Affidavit of Deborah R. Scott, Exhibit A to Motion to Remand (Doc. No. 4-1) ("Scott Aff.")). C&Z believes that the five other categories of damages claimed in the Complaint "easily satisf[y]" the further $10,931.13 needed to exceed $75,000. *Id.* C&Z first points to estimates by a construction manager who is familiar with the Shopping Center and who says that repairs to the drainage pond will cost over $170,000. *See id.* at 4-5

(citing Gonzales Aff.). Next, C&Z asserts that "simple multiplication" of C&Z's "claim for future security and lighting costs will exceed $1,209,320." *Id.* In C&Z's view, "[s]imple multiplication is the sort of 'common sense' math task Defendants are required to do to determine" if a case is removable *Id.* at 5. Then, C&Z notes that "the City of Santa Fe has threatened fines of $500 for each day of violation" of building codes, beginning June 15, 2012. *Id.* at 5-6. C&Z thus calculates potential damages of $133,000 based on possible fines for that 266-day period. *Id.* at 6. Finally, C&Z refers to the "broad attorney's fees clause" in the Development Agreement, asserting that "at prevailing hourly rates of $300 per hour . . . only about 34 hours of defense time would have to be expended to, by itself, satisfy the" $10,931.12 that C&Z says is needed to reach $75,000. *Id.* (citing Scott Aff.).

  C&Z argues that the Tenth Circuit applies a "facially apparent" test under which, if "it appears from the 'face of the complaint' that the amount in controversy exceeds the jurisdictional amount, the grace period for 'other papers'" under § 1446(b) does not apply. *Id.* at 8 (quoting *Miera*, 143 F.3d at 1340). C&Z contends "it is facially apparent that [the] types of claims advanced in [C&Z's] Complaint here put Lowe's on notice that the case was removable at the time of filing." *Id.* In support of this claim, C&Z cites numerous cases from district courts in other Circuits. For instance, C&Z argues that "repair estimates may be used to establish the amount in controversy" if the plaintiff is seeking such repair. *Id.* (citing *F.C.I. Realty Trust v. Aetna Cas. & Sur. Co.*, 906 F.Supp. 30 (D.Mass. 1995), *McCoy v. Norfolk S. Ry. Co.*, 858 F.Supp.2d 639 (S.D.W.V. 2012)). C&Z also contends that "[t]he probable cost of complying with an injunction may be taken into account in determining whether the requisite amount in controversy exists," and that here, C&Z requests that the Court order Lowe's to repair the drainage pond. *Id.* at 9 (citing *Hoffman v. Vulcan Materials Co.*, 19 F.Supp.2d 475 (M.D.N.C. 1998)). Then C&Z points to the possible $500/day fine by the City of Santa Fe, to the fact that under the Development Agreement, Lowe's must indemnify C&Z for such fines, and to a case that cited such an indemnity obligation in determining the amount in controversy. *Id.* at 9-10 (citing *S. Dallas Water Auth. v. Guarantee Co. of N. Am., USA*, 767 F.Supp.2d 1284, 1300 (S.D.Ala. 2011). Finally, C&Z

returns to the issue of attorney's fees, contending that "$11,000 in today's world is just not that much," and that "common sense" and knowledge of "the realities of modern law practice" lead to a conclusion that C&Z's two attorney's fees claims alone easily surpass the required amount in controversy.[2] *Id.* at 11 (quoting *Miera*, 143 F.3d at 1340). Collectively, in C&Z's view, these cases show that C&Z's Complaint's allegations sufficiently established from the start that over $75,000 was at issue.

    2.  Lowe's Arguments Against Remand

Lowe's contends that C&Z's Complaint's "allegations concerning damages are, at best, ambiguous and did not provide [Lowe's] with the 'unequivocal notice'" of removability that Lowe's says the Tenth Circuit requires. Response at 1 (citing *Akin*, 156 F.3d at 1036). Lowe's disputes C&Z's claim that the Tenth Circuit uses a "face of the complaint" test allowing "speculation as to the extent of the plaintiff's damages to support removal." *Id.* at 2. Lowe's further asserts that the case C&Z cites for that test, *Miera v. Dairyland Insurance Co.*, actually articulates a test under which a complaint's allegations "support removal, 'if they evince to a 'legal certainty' [that] the claims total'" at least the required amount in controversy. *Id.* (quoting *Miera*, 143 F.3d at 1340). Lowe's notes that the present case is distinguishable from *Miera*, because unlike the complaint in *Miera*, C&Z's Complaint quantified only one of its claims—that for $58,299.96. *Id.* at 3. Lowe's argues that for Lowe's to have known that the case was removable at the time the Complaint was filed, Lowe's would have had "to speculate[, . . .] without any factual basis in the complaint," that C&Z was seeking an additional $16,700.05.[3] *Id.*

Lowe's explains that it "did not solely depend on the allegations of the complaint to support removal because [those allegations] were too ambiguous." *Id.* Lowe's believes that it "was presented

---

[2] As noted above, C&Z contends that Lowe's owes $5,779.92 of "pre-removal attorney fees authorized by contract," although that amount was not stated in the Complaint. Motion to Remand at 2. C&Z uses this sum, added to the over $58,000 stated in the Complaint, to reach $64,000, from which only $11,000 would remain to reach $75,000. *See id.* Of course, under § 1332, "the matter in controversy [must] *exceed*[] the sum or value of $75,000," so the fees would have to be at least $11,000.01, but the Court will not dwell on this minor mathematical distinction. 28 U.S.C. § 1332 (emphasis added).

[3] Lowe's states this sum as $16,700.04. *See* Response at 3. However, as noted above, § 1332 requires more than $75,000 to be in controversy; adding $16,700.04 to $58,299.96 would only *equal* $75,000, so the Court has stated the amount including the necessary extra penny to reach $75,000.01.

9

with new information after the initial 30 day removal period . . . in the form of the January 10, 2013 CAM charges spreadsheet which, for the first time, made it clear and unequivocal that the amount in controversy exceeded $75,000." *Id.* Lowe's then addresses C&Z's arguments regarding allegations in the Complaint that, according to C&Z, established that more than $75,000 was in controversy. First, Lowe's notes that although "C&Z apparently knew the amount of attorney's fees it had incurred to the date of the filing of the complaint . . . [C&Z] did not allege that amount in the complaint . . . and C&Z has not explained how Lowe's could have known that amount." *Id.* at 4. Second, Lowe's contends that C&Z never sent Lowe's a demand letter prior to litigation, so Lowe's never had any suggestion, prior to receiving the spreadsheet detailing CAM charges, that damages might exceed $75,000. *See id.* Third, Lowe's points out that the cost estimate for repairing the drainage pond was "not prepared until February 25, 2013, more than three months after the complaint was filed," and that this estimate was not provided to Lowe's until C&Z filed its Motion for Remand. *Id.* at 4-5. Lowe's attaches an affidavit from its store's project manager indicating that from July 2010 until the time the Complaint was filed, "there had been no final determination as to the scope of work needed" to fix the drainage pond. *Id.* at 5 (citing Affidavit of Jason James, Exhibit B to Response (Doc. No. 7-2) ("James Aff.")). Lowe's also notes that this affidavit confirms that Lowe's had "never disclaimed its contractual obligation to C&Z regarding the pond[, . . . so] Lowe's had no reason to believe that C&Z's complaint was seeking damages equal to the cost of remediating the pond." *Id.*

Finally, Lowe's distinguishes the cases cited by C&Z from other jurisdictions. Lowe's notes that, in the first place, the cases using an approach requiring a defendant to speculate about damages "are not germane because the Tenth Circuit has expressly disavowed that approach." *Id.* at 6 (citing *Akin*, 156 F.3d at 1036). Regarding C&Z's reliance on cases establishing that repair estimates may be used to establish the amount in controversy, Lowe's agrees that such estimates are acceptable. *See id.* at 6. However, Lowe's argues that a "crucial" difference between those cases, where a defendant asserting diversity jurisdiction supplied the estimates in question, and this case, where the plaintiff,

C&Z, is "offering a cost estimate without establishing that it had ever advised Lowe's of the cost estimate prior to the filing of the complaint." *Id.* at 7. Lowe's reiterates that "C&Z's repair estimate did not come into existence until February 25, 2013," and that it is "illogical and inconsistent with" *Akin* to "[d]emand[] that Lowe's extrapolate the possible cost of compliance with the injunction sought by C&Z at a time when even C&Z was unaware of the projected cost." *Id.* Lowe's also points out that despite its June 2012 letter about the drainage pond, the City of Santa Fe has still not issued a citation. *See id.* at 7-8. Lowe's notes that it is working with the City to resolve the pond's issues, so it "would have to disregard its own commitment [on the matter] to speculate about possible future fines and penalties." *Id.* at 8. Lowe's concludes that "[i]f C&Z believed, at the time that the complaint was filed, that the amount in controversy was substantially more than the $58,288.96 . . . , it was incumbent on C&Z to set out facts sufficient to put Lowe's on notice of the true amount." *Id.* at 9.

    3. C&Z's Reply

C&Z principally contends in reply that the Tenth Circuit's decision in *Miera* controls, not *Akin*, and that *Miera* requires courts to "conduct a 'reasonabl[e] read[ing]' of the complaint" to ascertain whether the complaint's allegations of damages will reach the jurisdictional minimum. PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO REMAND (Doc. No. 13) ("Reply") at 1-2 (quoting *Miera*, 143 F.3d at 1340) (alterations in Reply). C&Z argues that since its Complaint quantifies one set of damages at $58,288.96, and alleges that those damages are continuing, "it would be 'unreasonable' to expect that those costs would not exceed a mere $16,711 [*i.e.*, the amount C&Z says is needed to reach $75,000[4]] over the remaining 40+ years of the lease." *Id.* at 3 (quoting *Miera*, 143 F.3d at 1340). C&Z notes that it "agree[s] with Lowe's that "this Court should not 'speculate,'" and points out that C&Z has provided affidavits supporting its damage claims so that the Court does not have to speculate. *Id.* C&Z then attacks Lowe's reliance on *Akin* and *Huffman* for a different standard than *Miera*. *See id.*

---

[4] C&Z uses this number. *See* Reply at 3. However, as discussed above, the amount in controversy must *exceed* $75,000; the amounts given by C&Z would not even reach $75,000, as $58,288 plus $16,711 equals only $74,999.

11

at 4. C&Z argues first that "*Akin* did not even involve the amount in controversy requirement," and the plaintiff in *Huffman* only alleged damages "in excess of $10,000," a statement the Tenth Circuit found "insufficient to permit the defendant to discern the 'amount in controversy.'" *Id.* (quoting *Huffman*, 194 F.3d at 1077). C&Z also contends that, in any case, both *Akin* and *Huffman* use the "face of the complaint" test established by *Miera*, where C&Z says the Tenth Circuit "was able to conclude, based solely on the nature of the facts alleged in good faith in the complaint, that the jurisdictional minimum was alleged." *Id.* (citing *Miera*, 143 F.3d at 1340).

Next, C&Z responds to Lowe's arguments that Lowe's could not discern from the Complaint how much C&Z sought in damages. C&Z points to "reason and experience" to support its claim that Lowe's should have known that the attorney's fees claims and the drainage pond repair claims would, on their own, amount to a substantial sum. Reply at 5-6. C&Z dismisses the argument that Lowe's did not know C&Z was seeking damages for the full repair of the pond because Lowe's has been trying to fix it, saying that the Complaint clearly says that C&Z is seeking full damages. *See id.* at 6. Similarly, C&Z finds disingenuous Lowe's claim that Lowe's did not include probable repair costs when estimating the amount in controversy, because Lowe's has not disclaimed responsibility for those costs. *See id.* at 7. C&Z notes that even if Lowe's has not disclaimed responsibility, the fact remains that "Lowe's was in breach of a repair duty, [thus entitling C&Z] to recover the reasonable value of the repairs so that it could complete them itself." *Id.* at 7 (citing *Abrams v. Joel*, 134 S.E. 2d 480 (Ga. 1963)). Finally, C&Z reminds the Court of the presumption against federal jurisdiction. *See id.* at 8. C&Z asserts that Lowe's claim that C&Z's Complaint should have stated more facts in support of the amount in controversy goes against that presumption. *Id.* at 8-9.

    4.   Under Controlling Law, C&Z's Complaint Adequately Stated the Amount in Controversy

C&Z's Motion for Remand and related affidavits clearly demonstrate that well over $75,000 is at issue in this case. C&Z's mistake in most of its arguments and unpersuasive citations is that the Court's concern is not with whether there is actually over $75,000 in controversy. Rather, the issue is

whether C&Z's Complaint stated that amount clearly enough to start the thirty-day removal clock. As Lowe's points out, it is all well and good for C&Z to provide affidavits establishing the amount in controversy now; the question is whether those amounts were clear earlier—i.e., at the time C&Z filed its Complaint. C&Z is also wrong in asserting that the Court should follow the standard in *Miera*: *Akin*'s "clear and unequivocal notice" requirement controls. However, even under *Akin*'s standard, the Court concludes that C&Z's Complaint did, in fact, sufficiently plead damages that should have put Lowe's on notice that more than $75,000 was at issue.

        a. Relevant Recent Decisions In This District

The Court notes that the Tenth Circuit's standards for assessing whether a complaint has adequately stated grounds for removability seem to be susceptible to different interpretation depending on which party is contesting removal. That is, when a plaintiff disputes that the amount in controversy[5] exceeds $75,000, and did not state the amount in her complaint, district courts have been willing, even under the "clear and unequivocal" standard, to analyze the complaint and find that it plausibly states the jurisdictional amount. *See, e.g.*, *Aranda v. Foamex Int'l*, 884 F.Supp.2d 1186 (D.N.M. 2012) (complaint's unquantified allegations for "serious, permanent injuries, which required medical intervention, surgery, and time away from work, and which left him with a need for future medical treatment, a limp, and an inability to perform major life activities," satisfied amount in controversy requirement). On the other hand, in situations like the present one, when a plaintiff asserts that her complaint *did* state that the amount in controversy would exceed $75,000 and that removal was untimely, but the defendant protests that the amount was not clear until sometime after the complaint's filing, courts have tended to require an absolute statement in the complaint of a dollar figure over $75,000, or else they decide the complaint was ambiguous. *See, e.g.*, *Zamora v. Wells Fargo Home Mortg.*, 831 F.Supp.2d 1284 (D.N.M. 2011) (plaintiff's original complaint for damages, compensatory

---

[5] The Court uses amount in controversy as an example because it is pertinent here, but this discussion applies equally to other bases for removal, such as diversity or presence of a federal question claim.

damages, punitive damages, and costs was ambiguous, though plaintiff pointed to contract, home value, and other data establishing the amount; § 1446(b) clock only began when defendant learned of specific amounts); *Houston v. Wal Mart Store #831*, Case No. CIV 11-317 JEC/RHS (D.N.M. July 18, 2011) (unquantified personal injury claims in complaint were not clear enough to put defendant on notice that amount in controversy requirement might be satisfied, though plaintiff had given defendant additional information about her claims); *Evans v. Home Depot USA, Inc.*, Case No. CIV 09-1047 WPL/DJS (D.N.M. January 8, 2010) (though complaint included unspecified damage, letter sent to defendant indicated at least $50,000; defendant did not remove case until later receiving a settlement offer of $500,000, but removal was timely because the earlier claims were too speculative).

  The Court acknowledges that some of the difference in application of *Akin* may be chalked up to the realities of the litigation process. Parties usually have asymmetrical knowledge of a claim's value or merits at different stages; defendants' ability to ascertain the amount in controversy is even more complicated in jurisdictions like New Mexico, where state court rules of pleading prohibit plaintiffs from specifying most damages. *See* N.M.R.A. 1-008(A)(3); *see also Aranda*, 884 F.Supp.2d at 1205-6 (pointing out the difficulty for defendants caused by this rule). However, despite these potential asymmetries, the Court believes that the *Akin* standard can be applied evenly. The idea is not to give plaintiffs the upper hand by allowing them to prevent removal with vague pleadings, but also not to allow defendants to be lax in their assessment of a claim's value and remove late and claim that the complaint was too vague. *See Aranda*, 884 F.Supp.2d at 1216 (noting that "[j]udicial efficiency and comity counsel that the district court develop rules that require the parties to put their cards on the table early in the process"). As noted, district courts can find by a preponderance of the evidence that the value of unspecified claims in a complaint exceeds $75,000 when a plaintiff protests that they do not. The Court concludes that it is fair to expect a defendant to determine that similarly unstated but likely valuable claims in an original complaint would add up to more than $75,000, and to preclude a

defendant in such a situation from removing the case outside the thirty-day window, after sitting on its hands until the plaintiff provides absolute proof of the claims' value.

In sum, under *Akin* a complaint must give "clear and unequivocal notice" that it is removable or the § 1446(b) thirty-day removal clock does not start. 156 F.3d at 1036. *Akin* reiterated an earlier Tenth Circuit holding that for the clock to start, the complaint's claims "'should not be ambiguous' or . . . 'require[] an extensive investigation to determine the truth.'" *Id.* (quoting *DeBry*, 601 F.2d at 490). The point, *Akin* emphasizes, is that the defendant should be able to "intelligently ascertain removability" without having to guess or do much investigation. *Id.* (quoting *Ardison v. Villa,* 248 F.2d 226, 227 (10th Cir. 1957)). If it is not possible for the defendant to make such a determination, then § 1446(b)'s clock does not begin to run, but if enough information is presented that the defendant should know the case is removable, the defendant must remove or else waive its right to remove.

        b.    A Preponderance of the Evidence Shows that C&Z's Complaint States a Claim For More than $75,000

As noted, the Court agrees with Lowe's that *Akin*, not *Miera*, controls. However, despite citing the right standard, Lowe's cannot make a compelling argument that it did not have clear and unequivocal notice that the amount in controversy exceeds $75,000. In the first place, Lowe's knew that C&Z was demanding at least $58,288.96 on one continuing claim, plus claims on several other fronts, plus attorney's fees. Based on the knowledge of the continuing claim and the attorney's fees alone—knowledge that Lowe's had long before it received the spreadsheet with the CAM charges—Lowe's should have realized that C&Z was seeking more than $75,000. Regarding the attorney's fees, it takes no speculation or investigation to realize that attorney's fees alone will easily fill the difference between $58,288.96 and $75,000.01. Lowe's never addresses this point, which is telling. The Court is sure that both parties' counsel have already charged the parties in excess of that amount solely for litigating this motion to remand. Also, as noted, C&Z's Complaint specifically stated a fairly large amount of damages, and asked for future damages of the same kind. The Court notes that C&Z

attached both the ECCR and Development Agreement to its Complaint, and referred to provisions in those agreements, thereby requiring Lowe's to do even less work than it might have to recall its commitments on the lease at the Shopping Center. If C&Z had specified no damages at all, it would be a different situation, but that is not this case. With the knowledge that C&Z was asking for $58,288.96 on a continuing claim based on its contracts with Lowe's, plus attorney's fees, Lowe's could have "intelligently ascertain[ed] removability" when the Complaint was filed. *DeBry*, 601 F.2d at 489. Lowe's did not need to wait for the CAM spreadsheet to realize that over $75,000 was in play. The Court finds by a preponderance of the evidence that the Complaint provided Lowe's with clear and unequivocal notice of its removability.[6]

    5. Removal to this Court by Lowe's Was Untimely

As discussed, Lowe's should have known from C&Z's Complaint that over $75,000 of damages may be at issue and that, therefore, the case was removable. However, Lowe's did not remove the case until 92 days after C&Z filed the Complaint. This is well past the § 1446(b)'s thirty-day removal window. Therefore, removal was untimely and the Court will remand the case to the First Judicial District Court, County of Santa Fe, State of New Mexico.

**IT IS ORDERED THAT**

(1) PLAINTIFF'S MOTION TO REMAND (Doc. No. 4) IS GRANTED.

(2) PLAINTIFF'S COMPLAINT (Doc. No. 1-2) WILL BE REMANDED TO THE FIRST JUDICIAL DISTRICT COURT, COUNTY OF SANTA FE, STATE OF NEW MEXICO.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] Because the Court finds that the attorney's fees claim and the continuing charges based on the $58,288.96 claim would, alone, plausibly make up the relatively small amount needed to satisfy the amount in controversy, the Court need not go into the remaining components of C&Z's Complaint, which are more speculative.